# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHARLES BLEVINS,
:
    Petitioner,      Case No. 1:05-cv-038
:
 -vs-      Magistrate Judge Michael R. Merz

PAT HURLEY, Warden,
:
    Respondent.

**DECISION AND ORDER**

This case is before the Court on Petitioner's Second Motion for Discovery (Doc. No. 90). The Warden opposes the Motion (Doc. No. 94). Petitioner has not filed a reply in support and the time within which to do so under S. D. Ohio Civ. R. 7.2 has expired.

Petitioner seeks an order of this Court for DNA testing of items containing blood collected from the crime scene at the expense of the United States under 18 U.S.C. § 3006A or at the expense of the State.[1] The discovery is sought in support of Blevins' claim that his trial attorney provided ineffective assistance in failing to have these items tested and that his appellate attorney was likewise ineffective for failing to raise on appeal an assignment of error asserting trial counsel's ineffectiveness in this regard (Renewed Motion, Doc. No. 90, PageID 1541).

The Court previously denied Petitioner's request for DNA testing in part because Petitioner did "not state any evidence to support [his] claim that the testing will be exonerating

---

[1] The seven particular items sought to be tested are listed in the Renewed Motion (Doc. No. 90, PageID 1543).

1

(Decision and Order, Doc. No. 78, PageID 1441, reported at *Blevins v. Warden*, 2011 U.S. Dist. LEXIS 118511, 2011 WL 4852330 (S.D. Ohio Oct. 13, 2011)). The Court had granted permission for depositions of trial and appellate counsel with the expectation that "[o]nce Petitioners' counsel have been deposed and asked questions relevant to this subject, the Court will at least have some basis outside of Petitioner's subjective beliefs for evaluating this claim." *Id.* On December 9, 2011, the Court again denied DNA testing because the Petitioner had not supplied sufficient material to fill the gaps noted in the first order (Decision and Order, Doc. No. 82, PageID 1475-1476).

The depositions of trial and appellate counsel have now been taken, transcribed, and filed (Deposition of Stephen Wenke, Doc. No. 85; Deposition of Catherine Adams, Doc. No. 89). The standard for discovery in habeas corpus cases is set forth in *Blevins v. Warden, supra*, *1-4, and will not be repeated here.

Mr. Blevins' theory of the case is that unknown third parties broke into the apartment where he was with the victim, Robert White, and stabbed both of them. White succumbed to his wounds, but Blevins escaped and has now, he claims, been wrongly convicted of the murder. The Renewed Motion does not advert to any place where Mr. Blevins has purportedly testified to these facts and he did not testify at trial. Instead, the Renewed Motion refers the Court to the transcribed depositions of Adams and Wenke and then argues the facts without further record reference. Both attorneys had little specific recollection of the cases, probably because both are and have been for many years active criminal defense attorneys and this case was tried more than ten years ago.

Ms. Adams, the trial attorney, testified that:

2

> I don't know if anything could help the outcome because you never know what a jury is going to do but, I would say, frankly, we probably should have tested the DNA. I don't remember why we didn't, I don't remember the thinking behind it but, looking back, we probably should have done that.

(Adams Depo., Doc. No. 89, PageID 1537.)

Mr. Wenke, the appellate attorney, testified:

> Q. If there was DNA that was collected at the crime scene and some of the DNA was tested and presented as evidence and some of it wasn't and the client was claiming actual innocence, don't you think that it would have been trial counsel 's responsibility to have those items tested ?
>
> A. That's a good question. Yes. I think they could -- yes. It's funny because I hadn't really thought about that that much but, I would think that, you know, if there was other items that weren't tested if they were relevant to the defense, they may have. I can't tell you.
>
> Q. I guess if you assume that those facts are true, do you think that it might have been proper to raise an assignment of error of ineffective assistance of counsel for failure to test the items?
>
> A. I don't know. I think that the difficulty I had -- my recollection was, with it would have been – was what I had in the record. So, what I had in the record was, you know, whatever those test results were and whatever the testify [sic] was. Whatever the motions were filed pretrial. So, in answer to your question, given what I had in the record , I didn't raise that issue obviously.  So, that may be something for the Court to evaluate, whether that should have been done. But, from my perspective, I didn't have enough in the record to do that.

(Wenke Depo., Doc. No. 85, PageID 1498-1499.)   Both attorneys remembered that this was one of the bloodiest crime scenes they had ever confronted, which is consistent with Mr. Blevins' assertions.

From the many sites where blood was found, the investigators had three swabs tested[2]: from "sidewalk by the street," "outside door by steps," and "kitchen dish strainer." (Renewed Motion, Doc. No. 90, PageID 1542.) All three of these samples had Mr. Blevins' blood included, as shown by trial DNA evidence. Mr. Blevins now seeks to have the remaining blood samples tested. He argues

> The evidence used to convict Mr. Blevins was very weak and circumstantial. The DNA evidence would support Mr. Blevins version of the events. It [sic] DNA tests on the remaining blood samples show that one or more individuals, no [sic] including Mr. Blevins and Mr. White, were present in the apartment, then the state's theory of the crime is patently false. . . . If the jury has [sic] been presented with DNA evidence to prove a third person's presence, no reasonable jury could have convicted Mr. Blevins.

(Renewed Motion, Doc. No. 90, PageID 1542.)

Mr. Blevins' claim is that he was an innocent co-victim with Mr. White, who was a drug dealer. However, at this point, there is no **evidence** which unequivocally supports his claim. The fact that there was a lot of blood at the scene does not in itself support a conclusion that the blood came from other persons besides White and Blevins. At trial counsel argued from unidentified fingerprints and shoeprints that someone else had done it, but unidentified shoeprints and fingerprints in the apartment of a drug dealer are hardly surprising or exonerating of Mr. Blevins. He thus cannot show that his trial attorney was ineffective for not obtaining testing of all the blood samples; her admission now that she "probably" should have done so is not based on any analysis on her part.

This Court stayed this case for a number of years to permit Mr. Blevins to pursue state

---

[2] The factual recitations here are all taken from the Renewed Motion which does not provide record references. In repeating them, the Court is relying on the integrity of Petitioner's counsel. They should be taken as counsel's assertions, not findings of fact.

court remedies, including DNA testing. In affirming the trial court's denial of testing, the Hamilton County Court of Appeals noted the following:

> At Blevins's trial, the state presented the results of DNA analysis of much, but not all, of the blood evidence collected from White's apartment. White and Blevins were the only sources of the tested blood. The knife that killed White bore both White's and Blevins's blood, and Blevins had bled both inside and outside the apartment. The state also presented evidence that Blevins had sustained cuts only to the palm of his dominant hand. The evidence further showed that, before the murder, White and Blevins had argued over money, and White had possessed a "wad" of money, and that, after the murder, Blevins had possessed a bloody "wad" of money. And the evidence showed that Blevins had immediately fled from the scene and then the jurisdiction, and that while in flight, Blevins falsely claimed that he had been shot.
>
> The state's evidence thus placed Blevins in White's apartment during White's murder. The defense countered by pointing to fingerprints and shoeprints left at the scene that the state could not match to either Blevins or White and offered the theory that Blevins, like White, had been the victim of third-party assailants.
>
> A DNA-test result excluding Blevins and White as the sources of the untested blood would, as Blevins asserts, bolster the evidence, provided by the unmatched fingerprints and shoeprints, that others had been present in White's apartment when, or shortly after, he was murdered. But it would not wholly negate the other evidence, which tended to show that Blevins had handled the knife that had killed White, that he had fabricated a gunshot wound to explain his appearance and demeanor after the murder, and that he fled with White's money.

*State v. Blevins,* Case No. C-070905 (Ohio App. 1st Dist. Nov. 26, 2008, unreported). The state courts' decision not to allow DNA testing is of course not controlling in this case because a different legal issue is involved under the Ohio post-conviction DNA testing statute. See *Bies v. Bobby*, 556 U.S. 825 (2009). But its findings of fact from the trial court record are entitled to deference here. Under 28 U.S.C. §2254(e)(1), a state court's findings of fact are presumed

5

correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

Blevins offers no explanation to this Court of why he fled, why he took White's money, or why he falsely claimed to have been shot. While he has shown that the untested blood could possibly be relevant (if it shows what he asserts without ever having testified to the facts known to him which would support his claims), he has not shown it would be material. Given that it could also be further incriminating evidence against him, he cannot show that his trial attorney provided ineffective assistance of trial counsel in failing to have it tested. Absent that showing, his claim of ineffective assistance of appellate counsel must also fail. Accordingly, Blevins' Renewed Motion for Discovery is denied.

June 8, 2012.

                          s/ **Michael R. Merz**
                            United States Magistrate Judge